# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| CLAY ASHMORE THOMPSON, JR., individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>RENEWAL BY ANDERSEN LLC d/b/a RENEWAL BY ANDERSEN,<br><br>Serve registered agent at:<br>CT Corporation System<br>2 Office Park Court, Suite 103<br>Columbia, South Carolina 29223<br><br>    Defendant. | C/A No.:<br><br>**Class Action Complaint** |

## CLASS ACTION COMPLAINT

Plaintiff Clay Ashmore Thompson, Jr., individually, and on behalf of all others similarly situated, submits his Class Action Complaint against Defendant Renewal By Andersen LLC d/b/a Renewal By Andersen, and states:

### BACKGROUND

1. Robocalls are a problem that has plagued this country for over a decade and are a problem that continues to plague this country.

2. Between January and October 2024 alone, approximately 43.7 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited November 20, 2024).

3. Decades after the Telephone Consumer Protection Act ("TCPA") passed into law,

it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

4. Similarly, and further highlighting the problem of unwanted telephone communications, in 2023 alone, there were more than two million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission ("FTC"), *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited October 4, 2024).

5. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted robocalls. A leading sponsor of the TCPA described unwanted robocalls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

7. Plaintiff Clay Ashmore Thompson, Jr. ("Plaintiff" or "Thompson") brings this case against Defendant Renewal By Andersen LLC d/b/a Renewal By Andersen ("Defendant") to

2

protect his privacy rights and the privacy rights of the putative class members described in this Complaint - namely the right to be left alone from unwanted robocalls.

8. Defendant placed telemarketing robocalls, i.e., prerecorded or artificial voice calls, to Thompson and the putative class members despite not having received prior express written consent to place such calls.

9. The TCPA affords protections to people from receiving robocalls, i.e., prerecorded or artificial voice calls, if the recipients of such calls did not provide their consent to receive such calls. The penalty for placing robocalls to such persons is $500 per call and up to $1,500 if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(b)(1)(A); 47 U.S.C. § 227(b)(3); 47 C.F.R. § 64.1200(a); 47 C.F.R. § 64.1200(f)(9).

10. In addition, the South Carolina Telephone Privacy Protection Act ("SCTPPA") S.C. CODE ANN. § 37-21-10 *et seq.* protects persons from receiving telemarketing communications that spoof phone numbers on the recipient's caller ID and from receiving calls after their phone number have been registered on the National Do-Not-Call Registry. Among other things, the SCTPPA provides that for each such communication that violates the SCTPPA of $1,000 per communication, and up to $5,000 per communication if the SCTPPA is willfully or knowingly violated. S.C. CODE ANN. § 37-21-80.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

12. This Court has personal jurisdiction over Defendant because Defendant transacts business in South Carolina, places telemarketing calls to persons in South Carolina (like

Thompson), sells its various products and services in South Carolina and sells its products from various physical locations in South Carolina, and otherwise has continuous and systematic contacts with the State of South Carolina.

13. Defendant knowingly and purposefully availed itself to South Carolina by placing a robocall to Thompson at his "864" area code, which is associated with the State of South Carolina.

14. Thompson experienced the annoyance, frustration, and disruption from Defendant's robocall campaign, as described in this Complaint, while present in this District.

15. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claim arose in this District.

## PARTIES

16. Thompson is an individual who at all times material to this Complaint has resided in Inman, South Carolina and is and has been a citizen of the State of South Carolina.

17. Thompson brings this action on behalf of himself and all others similarly situated.

18. Thompson is the owner and subscriber of a cell phone bearing the phone number 864-XXX-8741 and has been the subscriber of that number at all times relevant to this Complaint.

19. Thompson registered his phone number on the National Do-Not Call Registry ("DNC List") on January 12, 2018, for the purpose of being left alone from unwanted telemarketing calls.

20. Defendant Renewal By Andersen, LLC d/b/a Renewal By Andersen, is a Minnesota limited liability company with its principal place of business in Minnesota and has been in good standing to conduct business throughout the United States at all times relevant to this Complaint.

21. Defendant is registered with the South Carolina Secretary of State's office as a foreign limited liability company that is authorized to transact business in South Carolina.

22. Defendant's registered agent is located in Columbia, South Carolina.

23. Defendant's business is selling and installing doors and windows in consumers' homes.

24. Defendant markets its products and services, in part, through telemarketing.

### Defendant's Robocalls

25. Defendant uses artificial and/or prerecorded voice calls to market its products and services, and even states on its website that it may use such technologies.

26. One of the platforms used by Defendant to place such calls states on its website, "The most successful companies use AI not to replace contact center agents, but to complement them. AI can help automate routine tasks and answer common FAQs, but customers should still have the option to interact with human agents when they have more complex issues (or simply want to speak with a real person)."

27. Defendant purchases telemarketing "leads" from "mass media vendors."

28. Thompson was not in the market for Defendant's products and/or services at the time he received the call at issue.

29. Thompson never provided Defendant "prior express written consent" or any form of consent to Defendant or anyone acting on Defendant's behalf to contact him on his cellular phone.

30. Yet, on November 6, 2024, Thompson received a telemarketing call on his cell phone from Defendant. The call appeared on Thompson's cell phone as originating from phone number 864-413-8604.

31. On information and belief, the originating phone number that appeared on Thompson's phone was spoofed with a South Carolina area code so as to make it more likely Thompson would answer the call. Specifically, the phone number that appeared on Thompson's phone is not an operable phone number.

32. Upon answering the call, Thompson answered "hello" and there was a long and unnatural pause on the other end. A prerecorded or artificial voice then stated the caller was reaching out because he had requested additional information about windows for his home. The response to "hello" was a scripted response.

33. Thompson has never requested any information about windows for his home.

34. To determine who was calling him as the prerecorded or artificial voice did not identify the name of the company, Thompson engaged with the caller. After each statement he made, the artificial or recorded voice on the other end responded after an unnatural pause and with unnatural timing.

35. The prerecorded or artificial voice asked Thompson common questions such as why he wanted new windows and said that most people want windows to help with noise and to save on energy costs.

36. The prerecorded or artificial voice then asked common questions, which were scripted, such as, "Is the home a trailer or cabin?" and "Is the home currently being built?" After Thompson answered each of these questions there was a long and unnatural pause.

37. After an unnatural pause, the prerecorded or artificial voice stated a scripted response telling Thompson he was qualified and mentioned that the company was "Renewal by Andersen."

38. Notably, approximately one week after receiving the robocall from Defendant,

Thompson received an advertisement in the mail from Defendant. The mailer includes Defendant's name and logo and promotes a Black Friday sale of "Buy One Window or Door and Get One 50% Off."

39. The mailer also includes a QR Code which allows the recipient to schedule an appointment with Defendant online. The QR Code takes the recipient to Defendant's website with a form to fill out to "request a free consultation."

40. On information and belief, Defendant placed similar calls to the putative class members.

41. Indeed, many other consumers have complained about unsolicited telemarketing calls from Defendant, including, but not limited to:

- "I cannot for the life of me get this company to LEAVE me ALONE!! I've asked by phone, I've sent a letter (two years ago now). Every month I get some ad, call, coupon. . . . It borders on harassment. . . . I beg you . . . please make them stop."

- "Since I moved (sic) into my house 5 years go I've got weekly flyers from Renewal by Andersen. Most recently they've managed to get my phone number and have texted me multiple times . . . . I've thought of filing a complaint with the office of the Attorney General but I'm curious what other have done. I've already made it clear I have no interest in their services and want them to discontinue contacting me in any way."

- "I live in Chicago but my family is in Detroit. Some of my info must have been bought and sold because I've been getting so much [Renewal By Andersen] spam the last 2 years."

- Person from Renewal by Andersen trying to sell me replacement windows. Told not to call me anymore, but called yet again. . . .

42. The purpose of each of Defendant's calls to Thompson and the putative class members was to attempt to get Thompson and the putative class members to purchase Defendant's products and/or services.

7

43. Defendant knew it should not have called Thompson and the putative class members yet called them anyway.

44. The phone calls Defendant placed to Thompson and the putative class members were harassing, irritating, invasive and annoying.

45. Defendant's phone calls invaded Thompson's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing calls.

46. Defendant's phone calls caused Thompson and the putative class members to waste time addressing and/or responding to the unwanted calls.

## Class Allegations

47. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Thompson brings this case as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

48. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Thompson seeks to represent the following classes:

> **Prerecorded Voice Call Class (Count I):** All persons in the United States who from four years prior to the filing of this action through the date a class is certified to whom either Defendant (or someone acting on its behalf) placed a prerecorded voice call that marketed Defendant's products and/or services. (Count I)
>
> **South Carolina Caller ID Class (Count II):** All persons with South Carolina area codes who from three years prior to the filing of this action to whom Defendant (or someone acting on its behalf): (1) placed phone calls marketing Defendant's products or services, and, (2) and the phone number appeared on the recipient's phone as originating from a different phone number than the phone number from which the call actually originated.
>
> **South Carolina DNC Class (Count III):** All persons with South Carolina area codes who from three years prior to the filing of this action to whom: (1) Defendant (or someone acting on its behalf) placed phone calls marketing Defendant's products or services, and, (2) the phone number called by Defendant (or someone acting on its behalf) was registered on the DNC List at the time such call was placed.

8

49. Thompson reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

50. The members of the proposed classes are so numerous that joinder of all members is impracticable. Thompson reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

51. Members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

52. On information and belief, Defendant has called and continues to place the offending calls at issue. It is reasonable to expect that Defendant will continue to make such calls absent this lawsuit.

53. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Defendant placed prerecorded or artificial voice calls to Thompson and the putative class members;

    b. Whether Defendant's conduct violates 47 U.S.C. § 227(b) of the TCPA;

    c. Whether Defendant's conduct violates the rules and regulations implementing the TCPA;

    d. Whether Defendant's conduct violates the SCTPPA;

    e. Whether Defendant placed calls to persons using spoofed phone numbers;

    f. Whether Defendant placed phone calls to persons whose phone numbers were registered on the DNC List;

      g.      Whether Thompson and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

      54.      Thompson's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

      55.      Thompson and his counsel will fairly and adequately protect the interests of the members of the proposed classes. Thompson's interests do not conflict with the interests of the proposed classes he seeks to represent. Thompson has retained lawyers who are competent and experienced in class actions, TCPA litigation and consumer law.

      56.      Thompson's counsel will vigorously litigate this case as a class action, and Thompson and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

      57.      A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

      58.      In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

59. Questions of law and fact, particularly the propriety of placing prerecorded voice calls, the propriety of using spoofed numbers, and the propriety of calling people on the DNC List, all predominate over questions affecting only individual members.

60. Defendant has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

## DIRECT AND VICARIOUS LIABILITY

61. Without having had the benefit of complete discovery, Thompson alleges that Defendant is directly liable for the unsolicited calls at issue because such calls were placed or made directly by Defendant.

62. However, if discovery reveals that some or all the calls were made by third-party/parties on behalf of Defendant, then Defendant is vicariously liable for those calls.

63. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

64. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

65. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

66. If Defendant directly placed the calls at issue to Thompson and the putative class members, Defendant is directly liable for those calls.

67. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Thompson.

68. In the event such third-party telemarketers were utilized by Defendant, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

69. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting leads and deriving profit from sales resulting from these unlawful telemarketing calls.

70. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

71. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

72. For the count identified below, if Defendant directly placed the call(s), it is directly liable. In the alternative, to the extent any call(s) were made by a third-party agent(s) acting on

either Defendant's behalf, then Defendant is vicariously liable for those unlawful calls and may be jointly and severally liable for said calls.

### Count I – Violations of the TCPA, 47 U.S.C. § 227(b) *et seq.*
### (Prerecorded Voice Violations – Individually and on Behalf of the Putative Class)

73. Thompson incorporates the allegations in the previous paragraphs as if fully stated in this Count.

74. The TCPA states, in relevant part, "It shall be unlawful . . . (A) to make any call . . . using [a] prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1).

75. A prerecorded voice telemarketing call cannot be placed to a recipient without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

76. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

77. Thompson and the putative class members did not provide "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9), for Defendant to contact them on their phones.

78. The calls placed by Defendant to Thompson and the putative class members were telemarketing calls because those calls encouraged the purchase of Defendant's products and/or services.  47 C.F.R. § 64.1200(f)(8)(i).

79. By placing calls to the phones of Thompson and the putative class members without first obtaining their prior express written consent, Defendant violated the express provisions of the TCPA, including, but not limited to, 47 U.S.C. § 227(b)(1).

80. The TCPA provides damages of $500 and up to $1,500 per violation. 47 U.S.C. § 227(b)(3)(B)-(C).

81. As permitted by the TCPA, Thompson also seeks to enjoin Defendant from placing such further calls to himself and the putative class members. 47 U.S.C. § 227(b)(3)(A).

82. Defendant violated Section 227(b) of the TCPA by placing the aforementioned prerecorded voice calls to Thompson's and the putative class members' phones.

83. Defendant knew or should have known it did not have the appropriate form of consent to contact Thompson and the putative class members yet called them anyway.

84. Thompson and the putative class members are each entitled to $500 per violation of Section 227(b) of the TCPA, and up to $1,500.00 for every violation determined to be willful.

WHEREFORE Plaintiff Clay Ashmore Thompson, Jr., individually, and on behalf of all others similarly situated, requests the Court grant the following relief in his favor and against Defendant Renewal By Andersen LLC d/b/a Renewal By Andersen, as to Count I:

a. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Thompson as the class representative;

b. Enter an order appointing Thurmond Kirchner & Timbes, P.A. and Butsch Roberts & Associates LLC as class counsel;

c. Enter judgment in favor of Thompson and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, and up to $1,500

per violation if Defendant willfully violated Section 227(b) of the TCPA or the applicable TCPA regulations;

   d. Enter a judgment in favor of Thompson and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from placing prerecorded voice calls without first obtaining the proper form of consent;

   e. Award Thompson and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration;

   f. Award all applicable pre- and post-judgment interest and court costs; and,

   g. Award Thompson and the class such further and other relief the Court deems just and appropriate.

**Count II - Violations of the South Carolina Telephone Privacy Protection Act ("SCTPPA")**
**S.C. CODE ANN. § 37-21-10 *et seq.* – individually, and on behalf of a class**
**– Caller ID Violations (South Carolina Caller ID Class)**

   85. Thompson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

   86. Thompson and the SCTPPA class members are "consumers" as defined by the SCTPPA, § 37-21-20(1) because they are natural persons who were the target of Defendant's telephone solicitations.

   87. The phone calls placed by Defendant to Thompson and the putative class members are "telephone solicitations" as defined by the SCTPPA, § 37-21-20(6) because the communications at issues were: (1) phone calls, (2) placed to phones with South Carolina area codes, and, (3) for the purpose of advertising Defendant's products and services.

88. Defendant is a "telephone solicitor" as defined by the SCTPPA, § 37-21-20(7) because Defendant made (or caused another person or entity to make) telephone solicitations to Thompson and the putative class members.

89. Defendant's calls to Thompson and the putative class members violate the SCTPPA, § 37-21-50(A) because the originating phone numbers that appeared on Thompson's and the putative class members' phones were spoofed, i.e., not the real number from which the call originated.

90. The purpose of the calls placed by Defendant to Thompson and the putative class members was to harass and/or obtain financial resources from Thompson and the putative class members in the form of them purchasing Defendant's products and/or services.

91. As a result of Defendant's violations of the SCTPPA, under the SCTPPA, § 37-21-80(A)-(B) Thompson and the putative class members are entitled to damages of $1,000 for each violation, and up to $5,000 for each violation determined to be willful.

92. In addition, Thompson and the putative class members are entitled to their attorneys' fees and court costs under the SCTPPA § 37-21-80(C).

**Demand for Judgment**

WHEREFORE Plaintiff Clay Ashmore Thompson, Jr., individually, and on behalf of all others similarly situated, requests the Court grant the following relief in his favor and against Defendant Renewal By Andersen LLC d/b/a Renewal By Andersen, as to Count II:

a. Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Thompson as the class representative;

b. Enter an order appointing Thurmond Kirchner & Timbes, P.A. and Butsch Roberts

& Associates LLC as counsel for the class;

c. Enter judgment in favor of Thompson and the putative class for all damages available under the SCTPPA, including: (1) statutory damages of $1,000 per violation of the SCTPPA, or up to $5,000.00 per violation of the SCTPPA if Defendant willfully violated the SCTPPA, (2) attorneys' fees; and, (3) court costs;

d. Enter judgment in favor of Thompson and the putative class that enjoins Defendant from placing offending calls to Thompson and the putative class members;

e. Award Thompson and the class all expenses of this action, and require that Defendant pay the costs and expenses of class notice and administration and any applicable pre- and post-judgment interest; and,

h. Award Thompson and the class such further and other relief the Court deems just and appropriate.

### Count III - Violations of the South Carolina Telephone Privacy Protection Act ("SCTPPA") S.C. CODE ANN. § 37-21-10 *et seq.* – individually, and on behalf of a class – DNC List Violations (South Carolina DNC Class)

93. Thompson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

94. Thompson and the SCTPPA class members are "consumers" as defined by the SCTPPA, § 37-21-20(1) because they are natural persons who were the target of Defendant's telephone solicitations.

95. The phone calls placed by Defendant to Thompson and the putative class members are "telephone solicitations" as defined by the SCTPPA, § 37-21-20(6) because the communications at issues were: (1) phone calls, (2) placed to phones with South Carolina area codes, and, (3) for the purpose of advertising Defendant's products and services.

96. Defendant is a "telephone solicitor" as defined by the SCTPPA, § 37-21-20(7) because Defendant made (or caused another person or entity to make) telephone solicitations to Thompson and the putative class members.

97. Defendant's calls to Thompson and the putative class members violate the SCTPPA, § 37-21-70(B) because Thompson and the putative class members' phone numbers were registered on the DNC List at the time they received the offending calls.

98. As a result of Defendant's violations of the SCTPPA, under the SCTPPA, § 37-21-80(A)-(B) Thompson and the putative class members are entitled to damages of $1,000 for each violation, and up to $5,000 for each violation determined to be willful.

99. In addition, Thompson and the putative class members are entitled to their attorneys' fees and court costs under the SCTPPA § 37-21-80(C).

## Demand for Judgment

WHEREFORE Plaintiff Clay Ashmore Thompson, Jr., individually, and on behalf of all others similarly situated, requests the Court grant the following relief in his favor and against Defendant Renewal By Andersen LLC d/b/a Renewal By Andersen, as to Count II:

a. Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Thompson as the class representative;

b. Enter an order appointing Thurmond Kirchner & Timbes, P.A. and Butsch Roberts & Associates LLC as counsel for the class;

c. Enter judgment in favor of Thompson and the putative class for all damages available under the SCTPPA, including: (1) statutory damages of $1,000 per violation of the SCTPPA, or up to $5,000.00 per violation of the SCTPPA if Defendant willfully violated the

SCTPPA, (2) attorneys' fees; and, (3) court costs;

   d. Enter judgment in favor of Thompson and the putative class that enjoins Defendant from placing the offending calls to Thompson and the putative class members;

   e. Award Thompson and the class all expenses of this action, and require that Defendant pay the costs and expenses of class notice and administration and any applicable pre- and post-judgment interest; and,

   i. Award Thompson and the class such further and other relief the Court deems just and appropriate.

      Respectfully submitted,

      THURMOND KIRCHNER & TIMBES, P.A.

      /s/ *Thomas J. Rode*
      Michael A. Timbes (Fed. Bar # 9951)
      Thomas J. Rode (Fed. Bar #11139)
      Sarah D. Baum (Fed. Bar # 13421)
      15 Middle Atlantic Wharf
      Charleston, SC  29401
      (843) 937-8000
      Michael@tktlawyers.com
      thomas@tktlawyers.com
      sarah@tktlawyers.com

      **BUTSCH ROBERTS & ASSOCIATES LLC**

      *Christopher E. Roberts*
      Christopher E. Roberts (*pro hac vice* forthcoming)
      7777 Bonhomme Avenue, Suite 1300
      Clayton, MO 63105
      Telephone: (314) 863-5700
      croberts@butschroberts.com

      *Attorneys for Plaintiff*